The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. CNA Insurance Company was the carrier on the risk.
3. An employee-employer relationship existed between the parties at all relevant times.
4. On or about April 4, 1995, the plaintiff was employed as a truck driver with the defendant-employer, at which time he was sprayed with raw sewage from a pressurized valve. The plaintiff was acting within the course of his employment at the time of the incident, and he sustained abrasions to his arm and stomach as a result of this accident.
5. The plaintiff ceased working for the defendant on June 17, 1996.
6. The plaintiff earned $12.00 per hour.
7. The parties submitted fifty-three pages of medical reports into evidence.
 * * * * * * * * * * *
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a forty-six year old married male high school graduate. He had prior work experience as a paramedic, a truck driver, law enforcement officer, an auto repairman, an ordained minister, and an associate at Wal-Mart.
2. On or about April 4, 1995, the plaintiff worked an average of forty-eight hours per week, which yields an average weekly wage of $576.00 and a compensation rate of $384.02.
3. The plaintiff began working for the defendant-employer in 1993. He drove the pump truck, dug up septic tanks, opened the tanks, pumped out the tanks and sealed it. He also pumped out grease traps at restaurants and portable toilets.
4. On April 4, 1995, the plaintiff was carrying a load of grease, septic tank and portable toilet sewage. As he began to off-load the truck, the plaintiff was sprayed in the face, chest and arm by the sewage. He rinsed off with the contents of his tea jug.
5. Plaintiff reported being sprayed by sewage to his employer, who offered to send him to a doctor. Plaintiff sustained abrasions to his arms, a small puncture wound from a piece of wire and the spraying of the sewage mixture into his eyes and mouth. Plaintiff went home to clean himself and treat his injuries.
6. The plaintiff went to work the next day and pumped two jobs, but then went home because of pain in his arm. The plaintiff began developing flu-like symptoms in the following weeks, but thought he was just coming down with the flu since his abdomen and arm were beginning to heal. Plaintiff tried to work through it thinking it would get better, but his symptoms continued to get worse. Plaintiff began to experience nausea, vomiting, diarrhea, and severe pressure headaches. The plaintiff sought medical treatment from Dr. Gary Ross due to his symptoms continuing to worsen.
7. The office notes from the May 22, 1995 office visit with Dr. Ross stated that, "the patient came in complaining of facial pressure, cough, congestion, hematuria, and chest pain since being sprayed with sewage while working in a septic tank. His urinalysis confirmed hematuria and his examination was consistent with a purulent sinusitus."
8. Plaintiff returned to Dr. Ross on May 31, 1995 and June 12, 1995 with complaints of myalgias and lethargy, in addition to the symptoms he complained of at the May 22, 1995 visit.
9. In June of 1995, plaintiff saw Dr. Paul Kamitsuka, an infectious disease expert in Wilmington, North Carolina. Dr. Kamitsuka's notes of June 27, 1995 state that, "Mr. Norton presents for f/u a day earlier because of symptoms of nausea and several episodes of vomiting two days ago, with persistent fatigue. He has had no fever. Has had continued watery diarrhea." Dr. Kamitsuka diagnosed plaintiff with chronic fatigue syndrome, but stated that he was unable to determine the etiology. Dr. Kamitsuka also stated that he could not rule out the April 4, 1995 accident as the cause of plaintiff's condition.
10. Dr. Ralph Corey, associate professor of medicine and infectious diseases at Duke University, saw plaintiff and was unable to determine the etiology of plaintiff's condition. In an August 2, 1996 letter, Dr. Corey related that, "Though (plaintiff) has a history of chronic psoriasis, treated previously with methotrexate, he was in fairly good health and working until he was sprayed in the face, abdomen, and arms with septic system effluence in April of 1995. The week after this, his symptoms of chronic fatigue, headaches, diarrhea, and abdominal pain developed. Though they have waxed and waned, they have not completely abated since April of 1995."
13. Plaintiff was seen on December 16, 1997 by Dr. Charles Lapp, director of the Hunter-Hopkins Center in Charlotte, North Carolina, which is a facility specializing in the research, evaluation, and treatment of chronic fatigue syndrome and fibromyalgia. Dr. Lapp, who is internationally regarded as an expert in this area, diagnosed the plaintiff as suffering from chronic fatigue syndrome and fibromyalgia. Dr. Lapp noted that the plaintiff had all 18 of the tender points associated with fibromyalgia.
14. Dr. Lapp also testified that to diagnose chronic fatigue syndrome, one must follow the Center for Disease Control criteria which requires taking a medical history, establishing the patient has had fatigue for at least six months, ruling out other possible causes, and finding that the patient has at least four of the eight typical symptoms of chronic fatigue syndrome as established by the Center for Disease Control. Dr. Lapp testified, and the Full Commission finds as fact, that the plaintiff has met the criteria as set forth above for a diagnosis of chronic fatigue syndrome
15. When asked about causation, Dr. Lapp testified and the Full Commission finds as fact that, "there was no evidence in medical records prior to that accident that he was having the kind of symptoms that developed following the accident. And as you know, the accident was associated with a significant viral-like illness with high fevers, infections, diarrhea, vomiting, and he just never recovered from that. So, from a causative standpoint or a temporal standpoint, I think that that industrial accident appeared to be the cause of his chronic fatigue syndrome."
16. Dr. Lapp, in his 12/9/97 independent medical examination of the plaintiff, states that, "The subject is unable to even perform sedentary work for more than a few minutes without prolonged rest, and even mild to moderate activity on a regular or sustained basis is out of the question. He would have difficulty dealing with other workers due to irritability, and would perform poorly under even minimal stresses. He is able to manage his own finances, but due to cognitive problems he would not be reliable to handle mathematical problems or money in a business. Based on my considerable experience with CFS/FM and epidemiological data from the CDC, it is medically certain that this condition would not improve significantly in the next 12 months."
 * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff experienced a compensable injury by accident arising out of and in the course of the employment on April 4, 1995. N.C. Gen. Stat. § 97-2(6).
2. As the result of the injury by accident which occurred on or about April 4, 1995, plaintiff suffers from chronic fatigue syndrome and fibromyalgia. Id.
3. The plaintiff is entitled to permanent total disability compensation at the rate of $384.02 per week, since he is unable to earn wages because of his compensable chronic fatigue syndrome and fibromyalgia. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment by defendant of all medical expenses incurred as a result of his April 4, 1995 injury by accident to the extent that the same are reasonably required to effect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation at the rate of $384.02 per week from April 4, 1995 and continuing until there is a change of condition, return to work, or further order of the Industrial Commission for the permanent total disability plaintiff has sustained as a result of his injury by accident. The amount accrued to date shall be paid in a lump sum with interest at 8% per year until paid.
2. Defendants are entitled to a credit for any days after April 4, 1995 in which plaintiff attempted to return to work and was paid for such by the employer-defendant.
3. Defendants shall provide ongoing medical treatment which may be reasonably necessary to give plaintiff relief from pain or lessen his disability and shall pay for all past medical expenses resulting from these compensable accidents.
4. A reasonable attorney's fee in the amount of 25 percent of the compensation awarded plaintiff under this opinion and award is approved for plaintiff's counsel. Twenty-five percent of the compensation accrued and due plaintiff shall be deducted and paid directly to his attorney. Thereafter, every fourth compensation check shall be sent to plaintiff's attorney.
5. Defendants shall pay the costs.
This 21st day of January, 2000.
 S/ _____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ ______________ LAURA K. MAVRETIC COMMISSIONER